Good afternoon, Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Mary L. McPherson presiding, case number 18-1285, People v. DeMarco Williams. Thank you. Welcome, Counselor. Before we begin, I would like each of you to, beginning with the appellant, to tell us your name and the appellant to tell us whether you would like to reserve any of the 20 minutes you will each be allotted for rebuttal. And then we will start timing and begin. We are relatively generous about time if you need more, but we would ask you to try to confine your remarks to the 20 minutes allotted. Who is the counsel for the appellant? Good afternoon, Your Honors. I'm Assistant Appellant Defender Matthew Daniels. I represent the appellant, DeMarco Williams. I would be asking to reserve five minutes for rebuttal. Okay, Mr. Daniels. Counsel? Assistant State's Attorney Angel Eggleston on behalf of the people of the state of Illinois. All right. Welcome, Mr. Eggleston. All right, Mr. Daniels, whenever you're ready, you may begin. May it please the Court, Counsel? Your Honors, we raised four distinct issues in this appeal. For the purposes of today, I was planning on focusing on just two of those issues, that being the acquittal evidence issue as well as the prosecutorial misconduct issue. Both of those are trial areas for which this Court should grant a new trial to DeMarco. I'm happy to answer any other questions the Court may have about any of the issues, but that's going to be my focus. So turning first to the acquittal evidence, DeMarco's trial was unfair because the jury didn't know that he was acquitted of the underlying offense of delivery of a controlled substance. Now, any time we have a prosecution for... I'm going to stop you for just a second because I think I misunderstood acquittal evidence because I believe we would like you to address the sufficiency of the evidence as well, which I believe was one of your arguments, and I interpreted that into acquittal evidence. So I would like you to address that. Obviously, that would be the necessity of a retrial. Of course, Your Honor. Mr. Daniels, just to follow on to Justice Mikva's comment, you indicated that both grounds required a reversal and remand for a new trial, but as I understand your brief, your argument on the sufficiency of the evidence is for an outright reversal. That's true, Your Honor. Okay. I just want to clarify that. Right. So issue one is our sufficiency issue. The remedy we would ask there is outright reversal. The other two issues, which are the trial error issues, would be the ones where the relief requested would be a new trial. So turning to the sufficiency of the evidence, the only question that the jury had to when sheriff's officers had appeared was a knowing violation of his electronic monitoring agreement or whether it was an innocent mistake. And here, the evidence was insufficient to show that this was anything other than a mistake. This was a case where there's some context about the living arrangements that are important to keep in mind in thinking about the evidence. DeMarco was staying with his Aunt Debbie in an apartment that was a 12-unit structure that housed several of DeMarco's relatives. He was living with his Aunt Debbie in one apartment across the hall, in another apartment was another member of DeMarco's family, and then up on the third floor of the building was DeMarco's sister. So at the time that the officers came by to check out, to do a compliance check, DeMarco wasn't in Aunt Debbie's apartment. We acknowledge that. DeMarco's testimony was that he was in the building. He was upstairs at his sister's apartment on the third floor taking a shower and using the toilets. And during that time, just wasn't around. There was... I want to stop you. Why is it even a mistake? What makes it clear that one needs to stay within apartment 1F to be in compliance? What in the agreement or the statute or anything makes it clear that that's what's required? Well, Your Honor, our point is that it wasn't clear for two reasons. One, the contract itself left was ambiguous as to whether he had to stay strictly within the confines of 1F. Add to that the fact that he has a fourth grade education. And there was also the unrebutted testimony from DeMarco that when he was dropped off by the Sheriff's Department on September 5th at his host site, what he was told by the officer was stay within the interior of the premises. Don't go outside of the building. That admonishment went unrebutted. And that was whether DeMarco had to stay literally within the confines of 1F. So that context helps explain why he being up at his sister's apartment using the shower when the officers came by explains that this truly was an innocent mistake. And I have a question to follow up on that. Can the conviction be sustained on the basis that he didn't show up for court on September 28th and he wasn't wearing the monitor when he was arrested on October 2nd? Can either of those be the basis for sustaining this conviction? Not on this record, Your Honor. Here, it's clear that the Sheriff's Department considered him to be AWOL on September the, I guess it was the 7th, which was the day of the compliance check. While the two officers were on scene, they were informed by their sergeant to declare DeMarco AWOL, and they took away the equipment that was on site. That was the box that is used in conjunction with the ankle bracelets. And I'll add that there was no evidence of any tampering with that box either, which also I think corroborates DeMarco's side of the story that this was an innocent mistake. Can you address the Electronic Monitoring Participant Responsibility Agreement, which specifically lists not only the building number, but also the apartment of 1F? Your Honor, I acknowledge that the agreement does say that, but that needs to be taken in that he received later that evening when he got dropped off at the host site, where he was told as long as he stayed in the interior of the building, he was okay. So that creates some real ambiguity as to whether, as to where the physical limitations were for DeMarco's was never rebutted by the state. So within that context, that certainly shows that the state hadn't met its burden in showing that this was a knowing violation. So for those reasons, the other thing to point out as far as the sufficiency of the evidence is that Officer Keith, who testified, acknowledged that when they were at the apartment doing this compliance check, that the ankle brace was pinging using their drive-by device. And Officer Keith at the time said he's in the building. So this is not a situation where DeMarco even arguably was disobeying that oral admonishment. According to the state's own equipment and the officer's contemporaneous impression, he was in the building. The officers just didn't look for him as were in the building. So for those reasons, the state's evidence was not sufficient to convict, and that would be a basis for an outright reversal. As for the other two issues, and now I'll address them both briefly, regarding the fact that the jury heard that DeMarco had been charged with delivery of a controlled substance. What's undisputed here is that before the escape trial, DeMarco went to trial on the delivery case and was acquitted. Certainly, the fact that the jury heard about this other charge created the that they could reach their verdict through improper considerations. And the way to mitigate that risk would be to tell the rest of the story, which is that it's true that he got charged with delivery, but he was also acquitted. Under those circumstances, the judge should have permitted that evidence to be introduced. And so the fact that the court denied that request was error. So Mr. Daniels, you indicated that the jury's hearing that he was charged with a particular offense would put in place a risk that he would be convicted on improper grounds. On the flip side of the coin, if the jury is advised that he was acquitted, could he be acquitted on improper grounds? Because the acquittal itself is not a defense to the charge of escape, right? True, Your Honor. I don't think that this would create a risk that the jury would acquit because they heard he'd been acquitted once before. What the acquittal evidence would provide is some mitigation from the fact that they heard that he was a drug dealer, allegedly. That was the nature of the charge. And being able to hear the rest of the story that, in fact, the state hadn't proved him guilty was not a... That was a piece of the puzzle that the jury should have been able to hear, and they didn't. And so, considering that the jury didn't hear that piece of the puzzle, and the fact that this evidence was not overwhelming, the error was not harmless. I know I'm running short on time. The evidence was pretty overwhelming, wasn't it? If, in fact, the crime only requires him to be acquitted. If that were all that was required, perhaps. But, again, there's the mens rea component of whether it was a knowing violation. And that was the issue that was in contention here. Correct. And that is the... Particularly here... The evidence is either insufficient or close, one or the other. So, in the last couple of minutes I have here, I also want to turn briefly to the prosecutorial misconduct issue. Here, the misconduct involved an intentional act during rebuttal, sitting in the witness chair and giving arguments. And it was an error... It was an act for which the prosecutor was unapologetic. And even after the fact said, I don't even think it was error at all. That was clearly incorrect, because under Empula-Masaka, a prosecutor is not permitted to get into the witness chair during arguments. Why isn't it incumbent on defense counsel to object, if it's all so clear? Here, defense counsel probably should have objected. And that's why we acknowledge that there is a forfeiture issue, because the issue didn't get raised until a post-trial motion. Nevertheless, relief is still proper here, because there was clear error. And certainly, under the first prong of plain error analysis, there is plain error, because as we've discussed before, the evidence was closely balanced. So, even though trial counsel didn't contemporaneously object, it's an error that this court can nevertheless consider. So, Mr. Daniels, your opponent argues that in each of the cases you cited on this point, that the court found the error to be harmless. Are there any cases where the court did not find harmless error? I haven't cited any, but I would also point that here, what makes the error not harmless is specifically the fact that the reason, well, two reasons. One, specific to this case, what was at issue in the evidence here was whether DeMarco's contention that this was an innocent mistake was to be believed or not. And that did during rebuttal was not just get into the witness chair to present argument, but content wise, what he was talking about was comparing the credibility of DeMarco to the law enforcement witnesses that testified. So, in this situation, the error is far more palpable, and it's harmful. It could have been what the jury ended up relying upon in finding him guilty. Keep in mind that this juror sent a note saying that we're at an impasse and the judge gave a prim instruction. So, here, it's a unique set of facts where the error isn't harmless and the evidence was closely balanced. And for that reason, this would be a situation where reversal and remand for this type of prosecutorial misconduct would be appropriate. And I believe I'm reaching close to the end of my time. I don't want to... You're perfect. You're perfect. You have five more minutes left. Are there any other questions from the panel? I do have a question. Mr. Daniels, you used the phrase prosecutorial misconduct. Would it be fair for us to find prosecutorial misconduct when, you know, one interpretation on the record is no one knew that a lawyer can't get in the witness stand. Apparently, the defense counsel didn't know. The judge didn't know. No one did anything. He permitted it to happen. Perhaps it's an instance where no one understood what the law was. I disagree, Your Honor. Even if that's... Let's say for the sake of argument that no one knew that you couldn't do this. It doesn't change the fact that Empul Masaka was decided two full years before this case went to trial. It was a published opinion and it was binding precedent upon the if that sort of precedent is not... If both lawyers and judges aren't held accountable for knowing the law, particularly when that much time has passed, there'd be a whole lot of instances where reviewing courts would have to grapple with doing, you know, giving someone a pass for being ignorant of the law, even though there was clear error. And that doesn't seem appropriate to you. Anything else? Thank you, counsel. You still have five more minutes. Ms. Eggleston, whenever you're ready. I would like to go back to defense counsel. He had indicated in regards to the evidence being closely balanced in the third issue that the jury had said that they were at an impasse. The jury actually never said that. When they sent that second note, what they had said is, what if we are at an impasse? And then Judge Lynn asked for the foreperson to come out and he asked something to the effect of, are you throwing chairs or is the conversation still civil? And the foreperson said, the conversation is still civil. And Judge Lynn on his own interpreted all of that to mean that he should give the prim instruction. However, there is nothing in the record to believe that the jury was ever deadlocked, that the prim instruction was even needed. And so that doesn't speak at all to whether or not the evidence was closely balanced. In regards to the Misaka case, the court did not create a bright line rule there. What they did is they looked at the improper behavior of the prosecutor in that case. And the court said that in and of itself was improper. They speak to about, I believe it's eight different improper things that the prosecutor said. And on top of that, that in the witness stand and the court said that made it even more egregious. But alone the improper comments that the prosecutor made, that was enough to reverse and send the case back down. That is what the court had said. So there is no bright line rule that was created. The court was... Ms. Eggleston, you acknowledge, don't you, that in the trial, a judge should remove a trial counsel from the witness stand? If there is something that is being done that's improper, because... Well, not if. I mean, anytime. I mean, didn't the court say as a matter of bright line law that trial counsel is not to argue a case from the witness stand? And that the trial court should sui sponte, remove trial counsel from the witness stand? I don't believe it exactly said that. Yeah. Well, let me ask you this then. What purpose... Why would trial counsel argue from the witness stand? I mean, I have a suspicion, and I'll just share it with you, that trial counsel is seeking the imprimatur of truth to his argument. What other reason is there? I think that everyone has a different style of the way they like to argue, the way they like to litigate. And here, this was the particular style of this prosecutor. And looking at the proper, and just to go back to what Judge Lynn said in the motion for new trial when he ruled on that, he said that this was at the beginning of rebuttal arguments, that it was very brief, and it was short. And there are very limited comments that were made. And would you agree that trial counsel did argue credibility from the witness stand? Yes. Okay. And it was proper for the prosecutor to argue credibility because here, which is very different from Misaka, the defendant did testify. And at that point in time, credibility is an issue. And the prosecutor is allowed to compare the credibility of the defendant to that of the witnesses that did testify. Is it your position that counsel can argue credibility from the facts that people believe that it was proper? Okay. So, it seems to me you're staking out a position that the trial lawyer did, but that you haven't staked out in your briefs on appeal. Because on your briefs on appeal, you've argued that it's harmless error. If the court was to find that there was error, our position is that we believe that the comments that the prosecutor made were, in fact, proper, and that it was the prosecutor's style of argument to sit in the witness stand. So, are you saying that, as a matter of law, trial counsel can argue their case from the witness stand? No. No. No. And proper comments that are made from the witness stand do not rise to the level of error, especially just looking at whether or not the comments that were made by the prosecutor were proper. And here, they were within the boundary of proper argument. And that is not made clear in the cases that are cited in the people's briefs, specifically to respond to counsel's argument regarding the evidence being closely balanced. The evidence was not closely balanced here. The people had called an investigator, Investigator Ferguson, who actually went over the agreement and contract with the defendant. And Investigator Ferguson said that he thoroughly went through that contract with him and the agreement. But what in that contract or agreement specifies that he needs to remain in the specific unit? What language are you relying on? In the contract, it specifically says you agree to remain within the interior premises of your residence 24 hours per day unless sheriff's office personnel have granted prior approval of an absence. But how do we know the interior doesn't include the mail room? It doesn't include the laundry room doesn't include? How do you how is one to know from this contract that it must be within apartment one now in term rather than the interior of the building? Well, so for example, if I live in a condo building, and I live in my condo, a reasonable person would believe that my residence would be my condo, not me going around to the condos that are on the second floor and the third floor. My residence is where I specifically live. And here, the defendant told Investigator Ferguson that he was going to live in apartment one F with his aunt, he didn't say he was going to live anywhere else. That that is specifically what he told Investigator Ferguson. And I think it's important to look at the the defendant's behavior here. The defendant said he went upstairs to his sister's house to take a shower and use the bathroom. He gets back downstairs. And just to point out the investigators were there for 24 to 30 minutes. And no mail came in and out of the apartment one F that whole time. And there was a woman who was in the back of the apartment one F went to the back, open the door and screamed DeMarco's name. He never came. And the going back. So when the defendant went back to apartment one F, his aunt told him, the sheriff's were here. If you call them, if you if you turn yourself in, you won't get a warrant. The money was that he then did try to call for a number of hours. Correct. He said that he was on hold for a couple of hours. And then he just decided to hang up. But he didn't call back. He didn't try to go to the sheriff's office the next day. What did he do? He ended up cutting off his electronic monitoring band. He did not go to court on September 28. And then he was eventually arrested again outside of that host location with no band on all of these Miss Eggleston. What does the indictment charging with? It says escape and it says honor about September 7th. So is it proper for I mean, Justice Mikla asked Mr. Daniels whether the conviction can be affirmed based on violations of law after September 7th. Is it proper for us to look at that evidence when he's charged with an offense on September 7th and no other day? Yes, because it goes to show his consciousness of guilt, his behavior, just in and of itself right after right after when he comes back from his sister's apartment, as he says, he says he's anxious, he's scared, he doesn't want to go back to jail. So he calls the number, he waits for hours. If he's so scared, why didn't he go to the jail, go to the sheriff's department, he didn't do any of that. He just stayed at his house. And he testified the next day, he was gonna, I believe, either call again or turn himself in. But his aunt told him just wait. No, that speaks specifically to his knowledge. He knew that he had violated the terms of the electronic monitoring contract. So he just decided to do nothing. Let me ask you this, Miss Eggleston. Did the state offer any witness to testify that the terms of the contract or the law require that you remain within the confines of your apartment, as opposed to your apartment building? No, but... And so then the next question is, is someone like Mr. Williams permitted under the terms of this contract to do his laundry, assuming his laundry is located outside his apartment unit, but within the building? Or is he permitted to retrieve his mail, let's assume is in the vestibule of his building? Is that permitted under the terms of this contract? I believe it is. And... Well, there is no specific language. In answering that question... Let me ask you one final question. Would you concede that it's probably a fair assumption that a lot of detainees on electronic home monitoring live in multi-unit buildings? Probably. I know it's not in the record and I grant you that, but it's probably a fair, you can safely assume that, right? Yes. I think the... And I said this was my last question, but this is really my last question. That seems to be a noticeable omission in the terms of this contract. When you have such a large population that live in multiple unit buildings, why doesn't the contract actually say where you're permitted to go within your building? Because I've lived in multi-unit housing. I like to do my laundry occasionally and I like to retrieve my mail and pick up my packages and go to the storage room and perhaps even visit somebody in the building. Why isn't that all laid out? I noticed that there were some other rules and regulations that were referenced, but were never admitted into evidence. And I don't know whether those rules and regulations speak to this issue, but this record does not. Yes. So, just to go back to the address specifically, I did fail to mention this when you were in one of your previous questions that you had asked. The responsibility agreement does list the address, specifically apartment 1F. And both of these documents, the... And that responsibility agreement is actually between the defendant and 3M Electronic Monitoring, Inc. Correct. Which I assume is a private party that runs the electronic home monitoring program in the sense that it manages the equipment and maintains the equipment, that sort of thing. Yes. But these... Sort of an odd place to look for the terms and conditions of your confinement, isn't it? Yes. However, both of these, the contract and the agreement, Investigator Ferguson went over both of them with the defendant at the same time. And he asked the defendant, where are you going to be on electronic monitoring? So, the defendant knows himself because he's giving that information to the investigator. I'm going to live at 1807 East 78th Street, apartment 1F. He knows that. He gave that information to the investigator. Oh, I'm sorry. I wasn't sure. Justice Johnson, were you going to ask a question? I'm sorry. Well, I did want to pose a question with respect to the failure to introduce or allow the introduction of the acquittal evidence. Is it okay if I just make one more comment responding to Justice Taylor? Sure. And specifically in regards to the time. So, you had asked about going to get the mail, going to do laundry. The person who is on electronic monitoring isn't going to be gone for 20 to 30 minutes. It doesn't take 30 minutes to go put your laundry in the washer, to go get your mail. It takes about five minutes. So, is there some type of provision in the contract that you can leave to get your mail or do your laundry so long as you are not gone for more than five minutes? No, there's not. However, here, his actions again after show that it wasn't an innocent purpose. And I think it's important to look at... I'm sorry. I don't understand that argument. You made it in your brief, and I don't understand why his conduct two weeks later demonstrates knowledge at the time that he went to take the shower that that was not permitted. How does that demonstrate that? I also specifically mean right after the sheriff's left, when he came back down to the apartment and his aunt told him if he didn't turn himself in, that a warrant would be issued. So, the defendant says he called as a... So, you're saying that the reason, the evidence of his knowledge that he had violated the agreement was that he didn't turn himself in right afterwards? Is that your argument? That speaks to it. And his behavior after September 7th is relevant because it just goes to show he did know he violated on September 7th. Because he said he didn't want to go back to jail. He was anxious. Then why wouldn't he go do something right away about it? To say, hey, this was a mistake. I didn't understand. I couldn't go upstairs to take a shower. That's not what he did. He chose not to show up to court, which he knew about from when he got the electronic monitoring in bond court. And he acknowledged that on cross-examination that he did know of the court date, but he didn't go. He acknowledged that he cut off his band, and he acknowledged that he was arrested outside of that host site without the electronic monitoring band on. If he didn't know that he violated, why would he be doing all of these things? It doesn't make sense. And I know Justice Johnson has a question, but I wanted to just follow up with this point before we move on. The question of knowingly, is it an objective or subjective standard? It would be objective, the reasonable person. So, then if it's objective, what does matter what Mr. Williams thought or what we can define from what he did? Why does that matter? If it's an objective standard, don't we simply look at the terms of the contract and whatever Mr. Williams may have felt down the road was really relevant? Yes. However, his knowledge would be a part of this because would the reasonable person know that they can't leave apartment 1F? And again, because of the reasons that I stated, the reasonable person would know that they can't leave apartment 1F for 20 to 30 minutes. And we have no evidence. And I think this is important. And I think it might be kind of going around your question, and I'm sorry, Justice Taylor, but that investigator Keith said that he had a drive-by device and it did locate the electronic monitoring band within that building. And because he corrected himself after he said that the defendant was in the building. He has no way of knowing that. And they went there because of a strap tamper alert, which means that the band could have been cut off, which means the defendant was actually never in the building when the sheriffs showed up at 1807 East 78th Street, apartment 1F. We have no reason to believe that he was there because the call was for a strap tamper. But the sheriff would have also had discretion had they arrived and determined, let's say he had come down from the third floor. There was testimony that they had discretion, correct, to either violate them or not violate them if they saw that there was some extenuating circumstances. That is correct. Now I'd like for you to answer my earlier question, please. So in regards to the acquittal evidence, I think it's important to look at in any other situation, acquittal evidence is not allowed only as counsel in his brief had indicated proof of other crimes. And with proof of other crimes evidence, it's speaking to a bad act. For example, to go to help with intent, modus operandi, motive, that is what proof of other crimes is allowed in for. We don't have that here at all. This is an element of the charged offense. And normally a defendant, if he testifies, is not allowed to get into the fact that he was acquitted of another offense. That's character evidence. He's not allowed to get into that. If proof of other crimes, for example, I believe it was in ward, it was a sex case and there was an acquittal of the proof of other crimes sex case that came in. The jury should have heard about that because the jury is allowed to use that information to factor in the believability of that witness. But they were allowed to hear that he was charged, correct? Correct. And that's an element of the offense. Mm-hmm. And so the defendant being acquitted later in time does not affect that he still had to abide by the terms and conditions on September 7th of 2017. So as Judge Lynn, when he ruled on this said, it's irrelevant. It has nothing to do with the crime charge. It is an element that the state has to prove. And that is what we did. And it's important here to look at the prosecutor never really drew attention to it. The prosecutor had said that the unlawful use of a weapon by a felon conviction that came in to impeach the defendant, that they're going to receive an instruction about that. So the jury was never, their attention was never really drawn to the fact that he might have delivered a controlled substance. It's the fact that he was on electronic monitoring for a felony offense. And that just happened to be delivery of a controlled substance. I understand that it's an element of the offense. However, it seems that if you are erroneously charged of a crime and that evidence is allowed in that the prejudice of the jury having that evidence would be significantly, would significantly outweigh the benefit of that information to the jury. Wouldn't you agree? I do not. I think that letting the information in would mislead the jury and confuse them. They would wonder why, why am I, why are they hearing about the fact that the defendant was acquitted of the delivery if they're supposed to think about, well, did he actually violate the terms for a case he was on bond for, but now he was acquitted? There's really, it just seems as though that the jury would, they could possibly put some legal significance on the fact that the defendant was acquitted, even though he was still required to abide by the terms. And in, for example, in proof of other crimes cases, there is a limited instruction that's given. And here, what instruction would be given to the jury to tell them how they should factor this in? The fact that the defendant was acquitted of the felony that he was on bond for, because the jury would need to hear something. And what purpose would they be given? Why are receiving this information? What's the reason? The defendant isn't entitled to have evidence come in to, I believe in counsel's brief, he talks about because the evidence is so closely balanced, this could affect the jury going one way or the other, whether or not they actually believe the that we're making a presumption that also, we don't even, we don't know that that would affect the jury, but again, in a normal criminal case, character evidence, like the fact that the defendant was acquitted of the delivery, excuse me, that would never come in. That's not something that would come in. Counsel, you are out of time. I think you've answered Justice Johnson's Yeah. Okay. Any other questions from the panel? All right. Rebuttal. Your honors, I have several points in rebuttal. Let me start with the prosecutorial misconduct issue. Contrary to the state's assertion, Empul and Misaka did create a bright line rule. Prosecutors cannot get into the witness box, sit down in the witness chair and argue, full stop. That was not contingent on whether a defendant does or doesn't testify. It's not contingent on whether there were other acts of prosecutorial misconduct. The context of Empul and Misaka makes that clear. Remember that in that case, the second district did not reverse remand for a new trial. They reversed outright on a sufficiency basis, but they also understood their obligation under People v. Johnson to call out prosecutorial misconduct when it happens. And the lesson of Empul and Misaka is that if it happens once, that's enough. And here, this is not an accidental act. This was intentional. And Justice Taylor is correct that it gives the government's imprimatur in the jury's task of weighing credibility. Additionally, the context in which this prosecutor made that decision to get into the witness stand is also pertinent here. Keep in mind that by the time this case went to trial, it was the third time DeMarco had been taken to trial by the state in the course of about four weeks. At the end, sometime in February, he goes to trial for the first time in the delivery. There's a mistrial because the jury's hung. The second time is like mid-March, the delivery case gets retried. He gets acquitted. So by the time that the prosecutor in the escape case decides to get up to give his rebuttal, there have already been two previous attempts where the state has tried to secure a conviction against DeMarco, and they've failed. And on top of that, the prosecutor here just heard a very compelling closing argument by the defense that marshaled all the evidence to show that the state hadn't met its burden once again. And so this time, the prosecutor here felt like he had to do something a little extra, and the little extra he did was simply not permitted. There is never a time where a prosecutor can ever get into the witness chair. The witness stand is the place where sworn witnesses give evidence. It's not just prosecutors, right? It's any trial counsel. I agree, but it's especially egregious when prosecutors do it for precisely the reason you gave, Justice Taylor, that we have an agent of the government seeking to use the imprimatur of their office to sway the jury in its favor, in the task of trying to get a conviction. Well, but it's not the imprimatur of office, right? You know, witnesses get in the witness stand, they take an oath, they're supposed to tell the truth. It's really the imprimatur of truth that we're concerned about here, right? Well, and the other concern is that when the prosecutor gets into the witness chair, it also suggests that his argument is testimonial in nature, because that place in the courtroom has a very specific function. It is the place for people to give evidence, not for advocates to make arguments, and that is why the line gets crossed any time an advocate gets into the witness stand to make arguments. I concede that if a defense counsel gets into the witness stand, that'd be a trial too, during closing arguments. But here, this issue has been framed as a prosecutorial misconduct issue. There is no dispute that this prosecutor got up, walked into that witness box, sat down, and started arguing credibility. There is simply no two ways about it. There's no two ways about it that at the time you did it, there was clear precedent that said you can't do that. And the reason that that precedent was there in the first place was because on appeal, the state said we didn't realize that this was something you couldn't do. And so what the appellate court said what Justice Burkett said in Pula Masaka was, there shouldn't need to be a rule for this, but we're going to make it clear right now, you can't do that. And yet, two years later, in DeMarco's trial, the state got up and did it again. And to make matters worse, after the fact, during post-trial motions, the prosecutor said, I don't even think this should be considered error at all. I don't think I did anything wrong. And the reasoning that the justices gave in Pula Masaka for Wyatt's error doesn't make sense to me. It sounds like those justices are out of touch with reality, because jurors just don't have that kind of faith in what prosecutors have to say anyway. So this is a clear, unambiguous crossing of a bright line. And for that reason... I just want to make your two other points, because you are out of time, you said you had three points. Sure. So regarding the sufficiency issue, the state's conceded that there's nothing here in the contract that says you can't go into other places in the interior of the building. Take that concession, coupled with DeMarco's oral acknowledgement from the sheriff saying don't leave the interior from the building. This is an innocent mistake. And so the state hasn't proven knowledge. Third, regarding the acquittal evidence issue, Ward adopted the language from the DOI, which says fairness requires disclosure in some instances with acquitted conducts. That's what we have here. I recognize it's not an other crimes evidence issue per se, but it's the same general principle being applied in a new context. It's part and parcel with a defendant's right to present a complete defense, that is to tell the rest of the story. DeMarco didn't get to do that here. And for that reason, there was reversible error. So either under issue one, this court should reverse outright, or under issues two and three, this court should reverse and remand for a new trial. Thank you both for excellent work on this case, and we'll take this matter under review.